UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Grand Jury B-06-1

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | | Criminal No. 3:07cr11 (JCH) |
| **v.** | : | |
| | | |
| **COREY DAVIS, a.k.a.** | : | Violations: |
| **"Magnificent"** | | 18 U.S.C. § 371 |
| | : | (Conspiracy to Transport Minors for Immoral Purposes) |
| | : | 18 U.S.C. § 2423 (Transportation of a Minor for Immoral Purposes) |
| | : | 18 U.S.C. § 2421 (Transportation of an Individual for Immoral Purposes) |
| | : | 18 U.S.C. § 1591 (Sex Trafficking) |
| | : | 18 U.S.C. § 1589 (Forced Labor) |
| | : | 18 U.S.C. § 1201 (Kidnapping) |
| | : | 18 U.S.C. § 1592 (Document Servitude) |
| | : | 18 U.S.C. § 1594 (Forfeiture) 18 U.S.C. § 2 (Aiding and Abetting) |

SUPERCEDING INDICTMENT

The Grand Jury charges:

COUNT ONE
(The Conspiracy To Transport Minors
and Women for Immoral Purposes)

The Defendant and A Coconspirator

1. **COREY DAVIS, a.k.a "Magnificent,"** ("DAVIS") a

defendant herein, is a citizen of the United States and was born

on or about February 13, 1972. At times relevant to this

Superceding Indictment, **DAVIS** was a pimp who controlled and

managed a group of female prostitutes whom he housed at a two-family residence (second floor and basement) located at 143-12 184th Street, Springfield Gardens (Queens), New York ("Queens residence"), and elsewhere.

2.  Shamere McKenzie, a.k.a. "Barbie" ("McKenzie"), who is not a defendant herein, is a citizen of the United States and was born on or about July 21, 1983.  At various times relevant to this Superceding Indictment, McKenzie resided at the Queens residence.  At various times relevant to this Indictment, McKenzie was **DAVIS'S** "bottom," the pimp's most trusted prostitute, who facilitated transportation of the females who were prostituted to various adult strip clubs, collected cash proceeds generated from the prostitution, informed them of the "rules," and maintained control over the females who were prostituted when **DAVIS** was not present.

### The Victims

3.  One minor victim 1 ("MV#1"), whose true identity is known to the Grand Jury, is a girl who at the time of the commission of the offenses was twelve-years-old.

4.  A second minor victim ("MV#2"), whose true identify is known to the Grand Jury, is a female who at the beginning of the commission of the offenses was seventeen-years-old.

5. A third minor victim 3 ("MV#3"), whose true identity is known to the Grand Jury, is a female who at the beginning of the commission of the offenses was fifteen-years-old.

6. A fourth victim ("V#4"), whose initials are "AW" and whose true identity is known to the Grand Jury, is a female who at the beginning of the commission of the offenses was approximately eighteen-years-old.

7. A fifth victim ("V#5"), whose initials are "RG" and whose true identity is known to the Grand Jury, is a female who at the beginning of the commission of the offenses was approximately nineteen or twenty-years-old.

8. There were other females, whose true identities are unknown to the Grand Jury, but who have been identified by their "stage" names and who were also victims in this case.

## Overview of the Conspiracy

9. Commencing from at least early 2005 until July 2007, the exact dates unknown to the Grand Jury, **DAVIS** and his coconspirators were involved in a conspiracy, the object of which was to knowingly and intentionally transport minor girls, in interstate commerce, who had not attained eighteen years of age, and to knowingly and intentionally transport women, with the intent that the minor girls and women engage in prostitution and other unlawful sexual activity.

10.   To carry out this plan, **DAVIS** and others named and unnamed in this Superceding Indictment, recruited minor girls and other females and forced them to work as dancers in strip clubs and to engage in sexual acts in exchange for money, required them to turn over to **DAVIS** and McKenzie all of the money they earned, beat them, threatened them with serious bodily harm, confined them at the Queens residence, and transported them across state lines.

## The Principal Goals of the Conspiracy

11.   The principal goals of the conspiracy were for **DAVIS** and his co-conspirators: (a) to force the females to work for him as dancers and prostitutes so that he could enrich himself by taking the monies earned by the females; and (b) to control them through physical and psychological coercion, including, but not limited to, beatings, rapes, confinement, threats of serious harm, intimidation, and humiliation.

## The Manner and Means of the Conspiracy

**DAVIS and Others Control MV#1**

12.   In furtherance of this conspiracy, in or about April or early May 2005, the exact dates unknown to the Grand Jury, **DAVIS** and others, recruited MV#1 at an adult club in New York.  After speaking with MV#1, **DAVIS** subsequently directed her to go to his car and then he drove MV#1 and other females who were working for him to the Queens residence.  Thereafter, **DAVIS**

4

drove MV#1 to get hair extensions, a manicure, dancing clothes, and dance shoes so that she could begin working for him as a prostitute and dancer at strip clubs. **DAVIS**, who was aware MV#1 was under eighteen (18) years of age, also obtained a fraudulent identification card for MV#1 which falsely stated that she was born in 1984 when in fact she was born in 1992.

13. Beginning in or about April or early May 2005 and continuing to in or about May 2005, both dates being approximate and inclusive, within the District of Connecticut and elsewhere, MV#1 was required to make money for **DAVIS** by dancing and engaging in sexual acts at strip clubs where he directed her to work, to engage in sexual acts at private parties where he directed her to work, and by requiring her to engage in sexual acts at an area called the "Track" in Queens, New York that is known for prostitution. **DAVIS** drove MV#1 from New York to Connecticut for the purpose of dancing and engaging in sexual acts in exchange for money. While in Connecticut, MV#1 primarily worked at Bishop's Corner Café, located in Bridgeport, Connecticut, where it was not unusual for her to work approximately 12 hours per day and where **DAVIS** often required her to earn approximately $1,000 per day through dancing and/or engaging in unlawful sexual acts for money. Both **DAVIS** and McKenzie directed MV#1 to engage in sexual activity and McKenzie told MV#1 how much to charge for various sex acts at the various clubs. **DAVIS** also obtained hotel

rooms for MV#1 and the other females when they stayed in the same location for more than one day. McKenzie collected money from MV#1 and the other females if **DAVIS** was not present. MV#1 was directed to turn over all the money that she made to **DAVIS** and/or McKenzie.

14. In order to ensure MV#1's obedience, and to prevent her from leaving, **DAVIS:** (a) beat her by punching, kicking, and slapping her; (b) humiliated and degraded MV#1 and the other females; (c) threatened MV#1 with serious physical harm; (d) beat, humiliated, and degraded the other females in front of MV#1; and (e) threatened the other females with serious physical harm in front of MV#1. **DAVIS** retained control of MV#1 by, among other things, at various times confining her to the Queens residence.

15. In or about May 2005, MV#1 ran away from **DAVIS**.

**DAVIS and Others Control MV#2**

16. In or about January 2006, the exact dates unknown to the Grand Jury, **DAVIS** and an unnamed co-conspirator recruited MV#2. The unnamed co-conspirator, known to MV#2 as "Trini" (phonetic spelling), falsely enticed MV#2 by telling her that he had a friend who had a basement apartment in New York to rent for a nominal amount of money. MV#2 went to see the Queens residence that **DAVIS** controlled, which is where MV#1 was taken and where the other females were confined, and agreed to rent it. The

unnamed co-conspirator moved MV#2 into the apartment with all of
her belongings and identification documents.  Once in the
apartment, **DAVIS** approached her, took her cellular telephone, and
locked her inside.  **DAVIS** told her that he was a pimp and told
her that his girls work for him in strip clubs and confiscated
her identification documents.  On her first day in the house,
**DAVIS** directed MV#2 to wear dance outfits and high-heel shoes
selected by him.  MV#2 protested and asked to leave but was
frightened by **DAVIS** into staying and working for him.

18.   **DAVIS** then drove MV#2 from New York to
Connecticut.  **DAVIS** had possession over her identification
documents, which indicated that she was 17-years-old, and **DAVIS**
discussed her age with her.  MV#2 was introduced to other females
who worked for **DAVIS,** including McKenzie, who informed her of the
rules, which required her to dance and engage in prostitution and
approximately how much she should charge for the various sex
acts.  McKenzie was also aware of MV#2's age and directed her not
to tell anyone her age.  MV#2 was required to turn over all of
the money that she earned to **DAVIS** and/or McKenzie.

18.   MV#2 was directed to work primarily at "Pleasant
Moments" located in Bridgeport, Connecticut.  MV#2 was also
required to work at a Connecticut casino.  In or about March
2006, after she had turned eighteen-years-old, MV#2 flew to
Dallas, Texas with **DAVIS**, McKenzie, and the other females where

they danced and engaged in prostitution.

19.    In order to ensure MV#2's obedience, and to prevent her from leaving, **DAVIS**: (a) beat MV#2 which included punching her, kicking her, and slapping her; (b) humiliated and degraded MV#2 and the other females; (c) threatened MV#2 with serious physical harm; (d) beat, humiliated, and degraded the other females in front of MV#2; and (e) threatened the other females with serious physical harm in front of MV#2. **DAVIS** retained control of MV#2 by, among other things, confining her at the Queens residence and by brandishing a firearm in front of MV#2. **DAVIS** hit her with a firearm and on one occasion put the firearm in her mouth.

**DAVIS and Others Control MV#3**

20.    In or about December 2005, the exact dates unknown to the Grand Jury, **DAVIS** and an unnamed co-conspirator, known to MV#3 as "Trini," recruited MV#3. The unnamed co-conspirator falsely enticed MV#3 by telling her that MV#3 could stay with his cousin "Bobbie" and her boyfriend, Magnificent, and that they would help MV#3 get back on her feet. The unnamed co-conspirator drove MV#3 to the Queens residence where she subsequently learned that "Bobbie" was "Barbie" and that Magnificent expected her to prostitute for him. On her first day in the house, **DAVIS** directed MV#3 to take a shower and to wear dance outfits and high-heel shoes selected by him. MV#3 witnessed **DAVIS** beat two

8

other females in the house.

21.   Thereafter, **DAVIS** drove MV#3 to have her hair done, and to have a manicure so that she could begin working for him as a prostitute and dancer at strip clubs.  **DAVIS**, who was aware MV#3 was under eighteen (18) years of age, also obtained a fraudulent Pennsylvania identification card for MV#3, which card falsely stated that her name was Jillian Jones and that she was twenty-three years old.

22.   MV#3 was required to make money for **DAVIS** by dancing and engaging in sexual acts at strip clubs where he directed her to work, and to engage in sexual acts at private parties where he directed her to work.  McKenzie drove MV#3 from New York to Connecticut for the purpose of dancing and engaging in sexual acts in exchange for money.  While in Connecticut, MV#3 primarily worked at "Pleasant Moments," located in Bridgeport, Connecticut, where it was not unusual for her to work approximately 12 hours per day and where she earned on average $250 per day through dancing and/or other sexual activity.   Both **DAVIS** and McKenzie directed MV#3 to engage in sexual activity and both **DAVIS** and McKenzie told MV#3 how much to charge for various sex acts at the various clubs.  McKenzie also obtained hotel rooms for MV#3 and the other females when they stayed in the same location for more than one day.  McKenzie collected money from MV#3 and the other females if **DAVIS** was not present.  MV#3 was

directed to turn over all the money that she made to **DAVIS** and/or McKenzie.

23. In order to ensure MV#3's obedience, and to prevent her from leaving, **DAVIS:** (a) humiliated and degraded MV#3 and the other females; (b) frightened MV#3 to believe that he would physically harm her; (c) beat, humiliated, and degraded the other females in front of MV#3; and (d) threatened the other females with serious physical harm in front of MV#3. **DAVIS** retained control of MV#3 by, among other things, at various times confining her at the Queens residence.

24. In or about late December 2005, MV#3 ran away from **DAVIS**.

**DAVIS and Others Control V#4**

25. In or about February 2005, the exact dates unknown to the Grand Jury, **DAVIS** recruited V#4 to work for him as a prostitute. V#4 worked for **DAVIS** for periods of time from February 2005 until July 2007. In or about February 2005, **DAVIS** drove V#4 from New Jersey to New York where she began working for **DAVIS** as a prostitute. V#4 was required to make money for **DAVIS** by dancing and engaging in sexual acts at strip clubs where he directed her to work, and to engage in sexual acts at the Track in Queens. **DAVIS** and McKenzie drove V#4 from New York to Connecticut for the purpose of dancing and engaging in unlawful sexual acts in exchange for money. While in Connecticut, V#4

10

worked primarily at "Pleasant Moments" and also at Bishop's Corner Café, both located in Bridgeport, Connecticut where it was not unusual for her to work approximately 12 hours per day and where she earned on average $500 per day from dancing and other sexual activity.  V#4 understood that she was required to engage in sexual activity.  V#4 was required to turn over all of the money that she earned to **DAVIS** and/or McKenzie.

26.  **DAVIS** directed V#4 to engage in sexual acts for money in Connecticut, Texas, New York, New Jersey, and Florida. **DAVIS** transported or arranged for V#4's transport to the various states.  **DAVIS** purchased clothes and shoes for V#4 for her to wear while she was being prostituted.  **DAVIS** and/or McKenzie would also obtain hotel rooms when **DAVIS** required the females to stay overnight at various locations.

27.  In order to ensure V#4's obedience, and to prevent her from leaving, **DAVIS**: (a) beat V#4 which included punching her, kicking her, slapping her, and in one instance cutting her; (b) humiliated and degraded V#4 and the other females; (c) threatened V#4 with serious physical harm; (d) beat, humiliated, and degraded the other females in front of V#4; (e) provided her with marijuana; and (f) threatened the other females with serious physical harm in front of V#4.  **DAVIS** retained control of V#4 by, among other things, confining her in the Queens residence.  From in or about December 2006 to in or about July 2007, both dates

being approximate and inclusive, an unnamed coconspirator, who V#4 knows as "Deuce," also retained control over V#4 for **DAVIS** by, among other things, arranging for her housing in Florida, providing her with a cellular phone so that he could monitor her, instructing her on how to answer questions to federal authorities and while testifying before the grand jury, conveying messages from **DAVIS** to her, and collecting money from V#4 for **DAVIS**.

**DAVIS and Others Control V#5**

28.    In or about Spring 2005, the exact dates unknown to the Grand Jury, McKenzie recruited V#5 at "Pleasant Moments" in Bridgeport, Connecticut, to work for **DAVIS**. McKenzie drove V#5 to New York to meet **DAVIS** and V#5 subsequently began working for **DAVIS** as a prostitute.  V#5 was driven to the Queens residence controlled by **DAVIS** where she was provided with clothes and shoes for V#5 to wear when she was being prostituted by **DAVIS**.

29.    V#5 was required to make money for **DAVIS** by dancing and engaging in sexual acts at a strip club in Connecticut and working as a prostitute at the Track in Queens. McKenzie drove V#5 from New York to Connecticut for the purpose of dancing and engaging in sexual acts in exchange for money. While in Connecticut, V#5 primarily worked at "Pleasant Moments," located in Bridgeport, Connecticut where it was not unusual for her to work approximately 12 hours per day and where she earned on average $300 to $400 on a weekday and $600 to $700 per day on

the weekend from dancing and other sexual activity. V#5 understood that she was required to engage in sexual activity. V#5 was directed to turn over all the money that she made to **DAVIS** and/or McKenzie.

30. In order to ensure V#5's obedience, and to prevent her from leaving, **DAVIS:** (a) frightened V#5 to believe that he would physically harm her; and (b) threatened and yelled at V#5.

31. Approximately two weeks after meeting **DAVIS**, V#5 ran away from **DAVIS**.

### The Conspiracy

32. Beginning in or about early 2005 and continuing through in or about July 2007, both dates being approximate and inclusive, within the District of Connecticut and elsewhere, **COREY DAVIS**, **a/k/a "Magnificent,"** the defendant herein, Shamere McKenzie, who is not a defendant herein, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, that is, to violate Title 18, United States Code, Sections 2421 and 2423.

### Objects of the Conspiracy

33. It was a part and an object of the conspiracy that **DAVIS**, McKenzie, and others, did knowingly and intentionally transport in interstate commerce individuals who had not attained the age of 18 years, with intent that such individuals engage in

prostitution and other unlawful sexual activity in violation of Title 18, United States Code, Section 2423.

34. It was further a part and an object of the conspiracy that **DAVIS**, McKenzie, and others, did knowingly and intentionally transport in interstate commerce individuals with intent that such individuals engage in prostitution and other unlawful sexual activity in violation of Title 18, United States Code, Section 2421.

### Overt Acts

35. In furtherance of the conspiracy, and to effect its illegal objectives, **DAVIS**, McKenzie, and other co-conspirators committed and caused to be committed the following overt acts, among others, in the District of Connecticut and elsewhere:

a. In or about April or early May 2005, the exact date unknown to the Grand Jury, **DAVIS** and unnamed others recruited MV#1 to work as a dancer in strip clubs in Connecticut and elsewhere;

b. In or about January 2006, the exact date unknown to the Grand Jury, **DAVIS** and unnamed others recruited MV#2 to work as a dancer in strip clubs in Connecticut and elsewhere;

c. In or about December 2005, the exact date unknown to the Grand Jury, **DAVIS** and unnamed others recruited MV#3 to work as a dancer in strip clubs in Connecticut and elsewhere;

d.    In or about February 2005, the exact date unknown to the Grand Jury, **DAVIS** recruited V#4 to work as a dancer in strip clubs in Connecticut and elsewhere;

e.    In or about the Spring 2005, the exact date unknown to the Grand Jury, McKenzie recruited V#5 for **DAVIS** to work as a dancer in strip clubs in Connecticut and elsewhere;

f.    Beginning in or about April or early May 2005 and continuing through in or about May 2005, both dates being approximate and inclusive, **DAVIS** required MV#1 to service numerous men by engaging in unlawful sex acts in Connecticut and elsewhere;

g.    Beginning in or about January 2006 and continuing through in or about March 2006, both dates being approximate and inclusive, **DAVIS** required MV#2 to service numerous men by engaging in unlawful sex acts in Connecticut and elsewhere;

h.    In or about December 2005, the exact dates unknown to the Grand Jury, **DAVIS** required MV#3 to service numerous men by dancing at an adult strip club and engaging in unlawful sex acts in Connecticut and elsewhere;

i.    For periods of time between February 2005 and February 2007, both dates being approximate and inclusive, **DAVIS** required V#4 to service numerous men by engaging in unlawful sex acts in Connecticut and elsewhere;

j.    In or about Spring 2005, the exact dates being

15

unknown to the Grand Jury, **DAVIS** required V#5 to service numerous men by engaging in unlawful sex acts in Connecticut and elsewhere;

k.     Beginning early 2005 until in or about December 2006, both dates being approximate and inclusive, **DAVIS** required other females to service numerous men by engaging in unlawful sex acts in Connecticut and elsewhere;

l.     Beginning in or about April or early May 2005 and continuing through in or about May 2005, both dates being approximate and inclusive, **DAVIS** controlled MV#1 through physical violence and psychological coercion;

m.     Beginning in or about January 2006 and continuing through in or about March 2006, both dates being approximate and inclusive, **DAVIS** controlled MV#2 through physical violence and psychological coercion;

n.     In or about December 2005, the exact dates unknown to the Grand Jury, **DAVIS** controlled MV#3 through physical violence towards others and psychological coercion;

o.     For periods of time between February 2005 until in or about July 2007, both dates being approximate and inclusive, **DAVIS** controlled V#4 through physical violence, physical violence towards others, and psychological coercion;

p.     In or about Spring 2005, for a period of two weeks, the dates being approximate and inclusive, **DAVIS**

controlled V#5 through physical violence towards others and psychological coercion;

      q.   Beginning early 2005 until in or about December 2006, both dates being approximate and inclusive, **DAVIS** recruited and controlled other females through physical violence and psychological coercion;

      r.   Beginning in or about April or early May 2005 and continuing through in or about May 2005, both dates being approximate and inclusive, **DAVIS** harbored and confined MV#1 in the Queens residence;

      s.   Beginning in or about January 2006 and continuing through in or about March 2006, both dates being approximate and inclusive, **DAVIS** harbored and confined MV#2 in the Queens residence;

      t.   In or about December 2005, the exact dates unknown to the Grand Jury, **DAVIS** harbored and confined MV#3 in the Queens residence;

      u.   For periods of time between February 2005 and continuing through in or about December 2006, both dates being approximate and inclusive, **DAVIS** harbored and confined V#4 in the Queens residence;

      v.   In or about Spring 2005, for a period of approximately two weeks, the dates being approximate and inclusive, **DAVIS** harbored and confined V#5 in the Queens

residence;

w.    Beginning in or about early 2005 until December 2006, both dates being approximate and inclusive, **DAVIS** harbored and confined other females in the Queens residence;

x.    Beginning in or about April or early May 2005 and continuing through in or about May 2005, both dates being approximate and inclusive, **DAVIS** transported MV#1 from New York to Connecticut for the purpose of dancing and engaging in unlawful sexual activity at strip clubs;

y.    Beginning in or about January 2006 and continuing through in or about March 2006, both dates being approximate and inclusive, **DAVIS** and McKenzie transported MV#2 from New York to Connecticut for the purpose of dancing and engaging in unlawful sexual activity at strip clubs;

z.    In or about December 2005, the exact date being unknown to the Grand Jury, McKenzie transported MV#3 to Connecticut for the purpose of dancing and engaging in unlawful sexual activity at strip clubs;

aa.   For periods of time between February 2005 until December 2006, both dates being approximate and inclusive, **DAVIS** and McKenzie transported V#4 to Connecticut for the purpose of dancing and engaging in unlawful sexual activity at strip clubs;

bb.   In or about Spring 2005, the exact date being unknown to the Grand Jury, McKenzie transported V#5 to

18

Connecticut for the purpose of dancing and engaging in unlawful sexual activity at strip clubs;

cc.   Beginning in or about April or early May 2005 until December 2006, both dates being approximate and inclusive, **DAVIS** and McKenzie transported other females from New York to Connecticut for the purpose of dancing and engaging in unlawful sexual activity in strip clubs;

dd.   In or about March 2006, the exact date being unknown to the Grand Jury, **DAVIS** and McKenzie facilitated the transportation of MV#2 and other females to Dallas, Texas where they were required to work as dancers and engage in unlawful sexual acts;

ee.   In or about March 2006, the exact date being unknown to the Grand Jury, **DAVIS** and McKenzie facilitated the transportation of V#4 and other females to Dallas, Texas where they were required to work as dancers and engage in unlawful sexual acts;

ff.   Beginning in or about April or early May 2005 and continuing through in or about May 2005, both dates being approximate and inclusive, **DAVIS** required MV#1 to provide him and McKenzie all of the proceeds she received from dancing and prostitution;

gg.   Beginning in or about January 2006 and continuing through in or about March 2006, both dates being approximate and

inclusive, **DAVIS** required MV#2 to provide him and McKenzie all of the proceeds she received from dancing and prostitution;

hh.   In or about December 2005, the exact dates being unknown to the Grand Jury, **DAVIS** required MV#3 to provide him and McKenzie all of the proceeds she received from dancing and prostitution;

ii.   For periods of time between February 2005 until February 2007, both dates being approximate and inclusive, **DAVIS** required V#4 to provide him and McKenzie all of the proceeds she received from dancing and prostitution;

jj.   In or about Spring 2005, for a period of approximately two-weeks, the dates being approximate and inclusive, **DAVIS** required V#5 to provide him and McKenzie all of the proceeds she received from dancing and prostitution;

kk.   Beginning in or about early 2005 until December 2006, both dates being approximate and inclusive, **DAVIS** required other females to provide him and McKenzie all of the proceeds they received from dancing and prostitution;

ll.   Beginning in or about April or early May 2005 and continuing through in or about May 2005, both dates being approximate and inclusive, McKenzie would often collect all of the day's proceeds for **DAVIS** from MV#1;

mm.   Beginning in or about January 2006 and continuing through in or about March 2006, both dates being approximate and

20

inclusive, McKenzie would often collect all of the day's proceeds for **DAVIS** from MV#2;

nn.  In or about December 2005, the exact dates being unknown to the Grand Jury, McKenzie would often collect all of the day's proceeds for **DAVIS** from MV#3;

oo.  In or about February 2005 until December 2006, both dates being approximate and inclusive, McKenzie would often collect all of the day's proceeds for **DAVIS** from V#4;

pp.  In or about Spring 2005, for a period of approximately two-weeks, the dates being approximate and inclusive, McKenzie would often collect all of the day's proceeds for **DAVIS** from V#5;

qq.  At various times, McKenzie would often collect all of the day's proceeds for **DAVIS** from other females working for **DAVIS**;

rr.  Beginning in or about April or early May 2005 and continuing through in or about May 2005, both dates being approximate and inclusive, **DAVIS** and McKenzie would obtain hotel rooms for MV#1 to stay when there were working more than one day at the same location;

ss.  Beginning in or about January 2006 and continuing through in or about March 2006, both dates being approximate and inclusive, **DAVIS** and McKenzie would obtain hotel rooms for MV#2 to stay when she was working more than one day at the same

location;

tt.  In or about December 2005, the exact dates being unknown to the Grand Jury, **DAVIS** and McKenzie would obtain hotel rooms for MV#3 to stay when she was working more than one day at the same location;

uu.  For period of time between February 2005 and December 2006, both dates being approximate and inclusive, **DAVIS** and McKenzie would obtain hotel rooms for V#4 to stay when she was working more than one day at the same location;

vv.  **DAVIS** and McKenzie would obtain hotel rooms for the other females to stay when they were working more than one day at the same location;

ww.  Beginning in or about April or early May 2005 and continuing through in or about May 2005, both dates being approximate and inclusive, McKenzie maintained control of MV#1 by, among other things, informing her about the "rules" and taking actions to ensure that she would not run away;

xx.  Beginning in or about January 2006 and continuing through in or about March 2006, both dates being approximate and inclusive, McKenzie maintained control of MV#2 by, among other things, informing them about the "rules" and taking actions to ensure that she would not run away;

yy.  In or about December 2005, the dates being approximate and inclusive, McKenzie maintained control of MV#3

by, among other things, informing them about the "rules" and taking actions to ensure that she would not run away;

zz.   Beginning in or about April or early May 2005 and continuing through in or about May 2005, both dates being approximate and inclusive, **DAVIS** controlled almost all aspects of MV#1's daily life, including regulating her food intake;

aaa. Beginning in or about January 2006 and continuing through in or about March 2006, both dates being approximate and inclusive, **DAVIS** controlled almost all aspects of MV#2's daily life, including regulating her food intake; and

bbb. Beginning in or about January 2006 and continuing through in or about March 2006, both dates being approximate and inclusive, **DAVIS** and McKenzie exercised control over MV#2's identification documents in an effort to further control MV#2's movements.

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO**
**Mann Act Violation - Transportation**
**of a Minor for Immoral Purposes - MV#1)**

36.   The allegations contained in paragraphs 1 through 31 and 33 through 35 of Count One are re-alleged and incorporated as if fully set forth herein.

37.   Beginning in or about April or early May 2005 and continuing through in or about May 2005, both dates being

approximate and inclusive, within the District of Connecticut and elsewhere, **COREY DAVIS, a.k.a. "Magnificent,"** the defendant herein, did knowingly and intentionally transport in interstate commerce, a person, that is, MV #1, who had not attained eighteen years of age, with intent that such person engage in prostitution and other unlawful sexual activity.

All in violation of Title 18, United States Code, Sections 2423 and 2.

**COUNT THREE**
**(Mann Act Violation - Transportation**
**of a Minor for Immoral Purposes - MV#2)**

38.   The allegations contained in paragraphs 1 through 31 and 33 through 35 of Count One are re-alleged and incorporated as if fully set forth herein.

39.   Beginning in or about January 2006 and continuing through in or about March 2006, both dates being approximate and inclusive, within the District of Connecticut and elsewhere, **COREY DAVIS a.k.a. "Magnificent,"** the defendant herein, did knowingly and intentionally transport in interstate commerce a person, that is, MV #2, who had not attained eighteen years of age, with intent that such person engage in prostitution and other unlawful sexual activity.

All in violation of Title 18, United States Code, Sections 2423 and 2.

## COUNT FOUR
### (Mann Act Violation - Transportation
### of a Minor for Immoral Purposes - MV#3)

40.    The allegations contained in paragraphs 1 through 31 and 33 through 35 of Count One are re-alleged and incorporated as if fully set forth herein.

41.    In or about December 2005, within the District of Connecticut and elsewhere, **COREY DAVIS, a.k.a. "Magnificent,"** the defendant herein, did knowingly and intentionally transport in interstate commerce a person, that is, MV #3, who had not attained eighteen years of age, with intent that such person engage in prostitution and other unlawful sexual activity.

All in violation of Title 18, United States Code, Sections 2423 and 2.

## COUNT FIVE
### (Mann Act Violation -
### Transportation for Immoral Purposes - V#4)

42.    The allegations contained in paragraphs 1 through 31 and 33 through 35 of Count One are re-alleged and incorporated as if fully set forth herein.

43.    Beginning in or about December 2005 and continuing through in or about December 2006, both dates being approximate and inclusive, within the District of Connecticut and elsewhere, **COREY DAVIS, a.k.a. "Magnificent,"** the defendant herein, did knowingly and intentionally transport in interstate commerce, a person, that is, V#4, with intent that such person engage in

prostitution and other unlawful sexual activity.

All in violation of Title 18, United States Code, Sections 2421 and 2.

## COUNT SIX
### (Sex Trafficking - MV#1)

44. The allegations contained in paragraphs 1 through 31 and 33 through 35 of Count One are re-alleged and incorporated as if fully set forth herein.

45. Beginning in or about April or early May 2005 and continuing through in or about May 2005, both dates being approximate and inclusive, within the District of Connecticut and elsewhere, **COREY DAVIS, a.k.a. "Magnificent,"** the defendant herein, did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide and obtain a person, that is, MV#1, and did knowingly benefit financially and receive a thing of value from MV#1's participation in a venture which engaged in these acts, knowing that MV#1 had not attained eighteen (18) years of age and knowing that force, fraud, and coercion would be used to cause MV#1 to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591(a)(1), 1591(a)(2), 1591(b)(1), and 2.

## COUNT EIGHT
### (Sex Trafficking - MV#2)

46.   The allegations contained in paragraphs 1 through 31 and 33 through 35 of Count One are re-alleged and incorporated as if fully set forth herein.

47.   Beginning in or about January 2006 and continuing through in or about March 2006, both dates being approximate and inclusive, within the District of Connecticut and elsewhere, **COREY DAVIS, a.k.a. "Magnificent,"** the defendant herein, did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, and obtain a person, that is, MV#2, and did knowingly benefit financially and receive a thing of value from MV#2's participation in a venture which engaged in these acts, knowing that MV#2 had not attained eighteen (18) years of age and knowing that force, fraud, and coercion would be used to cause MV#2 to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591(a)(1), 1591(a)(2), and 2.

## COUNT NINE
### (Sex Trafficking - MV#3)

48.   The allegations contained in paragraphs 1 through 31 and 33 through 35 of Count One are re-alleged and incorporated as if fully set forth herein.

49.   In or about December 2005, within the District of Connecticut and elsewhere, **COREY DAVIS, a.k.a. "Magnificent,"** the

defendant herein, did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, and obtain a person, that is, MV#3, and did knowingly benefit financially and receive a thing of value from MV#3's participation in a venture which engaged in these acts, knowing that MV#3 had not attained eighteen (18) years of age and knowing that force, fraud, and coercion would be used to cause MV#3 to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591(a)(1), 1591(a)(2), and 2.

## COUNT TEN
### (Sex Trafficking - V#4)

50. The allegations contained in paragraphs 1 through 31 and 33 through 35 of Count One are re-alleged and incorporated as if fully set forth herein.

51. Beginning in or about February 2005 and continuing through in or about July 2007, both dates being approximate and inclusive, within the District of Connecticut and elsewhere, **COREY DAVIS, a.k.a. "Magnificent,"** the defendant herein, did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, and obtain a person, that is, V#4, and did knowingly benefit financially and receive a thing of value from V#4's participation in a venture which engaged in these acts, knowing that force, fraud, and coercion would be used to cause V#4 to engage in a commercial sex act.

28

All in violation of Title 18, United States Code, Sections
1591(a)(1), 1591(a)(2), and 2.

### COUNT ELEVEN
**(Forced Labor - MV#1)**

52.  The allegations contained in paragraphs 1 through
31 and 33 through 35 of Count One are re-alleged and incorporated
as if fully set forth herein.

53.  Beginning in or about April or early May 2005 and
continuing through in or about May 2005, both dates being
approximate and inclusive, within the District of Connecticut and
elsewhere, **COREY DAVIS, a.k.a. "Magnificent,"** the defendant
herein, did knowingly and intentionally obtain the labor and
services of a person, that is, MV#1, by means of threats of
serious harm to and physical restraint against such person, and
by means of a scheme, plan, and pattern intended to cause such
person to believe that if she did not perform such labor or
services, she or other persons would suffer serious harm and
physical restraint.

All in violation of Title 18, United States Code, Sections
1589(1), 1589(2), and 2.

### COUNT TWELVE
**(Forced Labor - MV#2)**

54.  The allegations contained in paragraphs 1 through
31 and 33 through 35 of Count One are re-alleged and incorporated
as if fully set forth herein.

55.   Beginning in or about January 2006 and continuing through in or about March 2006, both dates being approximate and inclusive, within the District of Connecticut and elsewhere, **COREY DAVIS, a.k.a. "Magnificent,"** the defendant herein, did knowingly and intentionally obtain the labor and services of a person, that is, MV#2, whose true identity is known to the Grand Jury, by means of threats of serious harm to and physical restraint against such person, and by means of a scheme, plan, and pattern intended to cause such person to believe that if she did not perform such labor or services, she or other persons would suffer serious harm and physical restraint.

All in violation of Title 18, United States Code, Sections 1589(1), 1589(2), and 2.

### COUNT THIRTEEN
### (Forced Labor - MV#3)

56.   The allegations contained in paragraphs 1 through 31 and 33 through 35 of Count One are re-alleged and incorporated as if fully set forth herein.

57.   In or about December 2005, the dates being approximate and inclusive, within the District of Connecticut and elsewhere, **COREY DAVIS, a.k.a. "Magnificent,"** the defendant herein, did knowingly and intentionally obtain the labor and services of a person, that is, MV#3, whose true identity is known to the Grand Jury, by means of threats of serious harm to and

physical restraint against such person, and by means of a scheme, plan, and pattern intended to cause such person to believe that if she did not perform such labor or services, she or other persons would suffer serious harm and physical restraint.

All in violation of Title 18, United States Code, Sections 1589(1), 1589(2), and 2.

## COUNT FOURTEEN
### (Forced Labor - V#4)

58.   The allegations contained in paragraphs 1 through 31 and 33 through 35 of Count One are re-alleged and incorporated as if fully set forth herein.

59.   Beginning in or about February 2005 until July 2007, the dates being approximate and inclusive, within the District of Connecticut and elsewhere, **COREY DAVIS, a.k.a. "Magnificent,"** the defendant herein, did knowingly and intentionally obtain the labor and services of a person, that is, V#4, whose true identity is known to the Grand Jury, by means of threats of serious harm to and physical restraint against such person, and by means of a scheme, plan, and pattern intended to cause such person to believe that if she did not perform such labor or services, she or other persons would suffer serious harm and physical restraint.

All in violation of Title 18, United States Code, Sections 1589(1), 1589(2), and 2.

## COUNT FIFTEEN
### (Kidnapping)

60. The allegations contained in paragraphs 1 through 31 and 33 through 35 of Count One are re-alleged and incorporated as if fully set forth herein.

61. In or about January 2006, the exact date unknown to the Grand Jury, within the District of Connecticut and elsewhere, **COREY DAVIS**, **a.k.a. "Magnificent,"** the defendant herein, did willfully and unlawfully kidnap, abduct, and carry away MV#2 in interstate commerce from New York to Connecticut, and did hold her for ransom, reward, and otherwise.

All in violation of Title 18, United States Code, Sections 1201(g) and 2.

## COUNT SIXTEEN
### (Document Servitude)

62. The allegations contained in paragraphs 1 through 31 and 33 through 35 are re-alleged and incorporated as if fully set forth herein.

63. Beginning in January 2006 and continuing through in or about March 2006, both dates being approximate and inclusive, within the District of Connecticut and elsewhere, **COREY DAVIS, a.k.a. "Magnificent,"** the defendant herein, knowingly concealed, removed, confiscated, and possessed government identification documents of MV#2, in the course of a violation of Title 18, United States Code, Sections 1589 and

1591.

All in violation of Title 18, United States Code, Section 1592(a) and 2.

## TRAFFICKING CRIMINAL FORFEITURE ALLEGATION

64. The allegations of Counts One through Fourteen of this Superceding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 1594(b).

65. Upon conviction of one or more of the offenses alleged in Counts One Through Fourteen of this Superceding Indictment, **COREY DAVIS, a.k.a. "Magnificent,"** the defendant herein, shall forfeit to the United States pursuant to Title 18, United States Code, Section 1594(b), all property, real and personal, that was used or intended to be used to commit or to facilitate the commission of such offenses, and all property, real and personal, constituting or derived from proceeds obtained, directly or indirectly, as a result of such offenses. The property to be forfeited includes, but is not limited to, the following:

### CASH

(a) Approximately $29,255.28 in United States currency, seized as follows: (1) Approximately $4,225.28 on **DAVIS'S** person at the time of his arrest; and (2) Approximately $25,030 located within a Mercedes Benz, white-colored (2-door) bearing vehicle

identification number WDBPJ75J4YA005311.

## VEHICLES

(a) a Mercedes Benz, white (2-door) bearing vehicle identification number WDBPJ75J4YA005311;and

(b) a Mercedes Benz, silver-colored bearing vehicle identification number WDBPJ75J01A015792.

## JEWELRY

Five pieces of jewelry found on **DAVIS'S** person at the time of his arrest estimated to be worth $110,000 which include:

(a) a Jacob & Co. watch (silver colored with diamond stones) with an estimated replacement value of $91,000;

(b) a ring (silver-colored with diamond stones) with an estimated replacement values of $4,000

(c) a ring (silver-colored with diamond stones) with an estimated replacement value of $10,000;

(d) one necklace with pendant (silver-colored with diamond type stones) with an estimated replacement value of $4,500; and

(e) one earring (silver colored with a diamond stones) with an estimated replacement value of $500.

**REAL PROPERTY**

(a)   A two-family residence (right-side residence) located at 143-12 184th Street, Springfield Gardens (Queens), New York, 11413.

66.   If any of the property described in paragraph 65 hereof as being forfeitable pursuant to Title 18, United States Code, Section 1594(b), as a result of any act or omission of the defendant(s) --

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred to, sold to, or deposited with a third party;

c.   has been placed beyond the jurisdiction of this Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

It is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), incorporated through Title 28, United States Code, Section 2461(c), to seek forfeiture of all other property of the defendant(s) up to the value of the property described in subparagraphs a through e of this

paragraph.

All pursuant to Title 18, United States Code, Section
1594(b).

A TRUE BILL

_____
FOREPERSON

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


_____
JOHN H. DURHAM
DEPUTY UNITED STATES ATTORNEY


_____
PETER S. JONGBLOED
CHIEF, CRIMINAL DIVISION


_____
KRISHNA R. PATEL
ASSISTANT UNITED STATES ATTORNEY


_____
MICHAEL J. FRANK
TRIAL ATTORNEY
CIVIL RIGHTS DIVISION